IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH ZAWLOCKI, BRITTANY STANTON, JAQUELINE GAVIN, and KELLY STANTON, on behalf of themselves and all other Plaintiffs, similarly situated known and unknown, <br><br> Plaintiffs, <br><br> v. <br><br> PARTNERS TAP, INC. d/b/a MORRISON ROADHOUSE, and ROBERT CASTLE, individually, <br><br> Defendants. | Case No. 21 C 34 <br><br> Judge Joan H. Lefkow |

## OPINION AND ORDER

Partners' Tap, Inc., and Robert Castle, its owner (together, "Partners"), do business as Morrison Roadhouse, a sports bar and restaurant. Sarah Zawlocki, Brittany Stanton, Jacqueline, Gavin, and Kelly Stanton filed this case as a collective action on behalf of past and present employees who have worked for Partners as bartenders. As relevant here, plaintiffs claim violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*.[1] Before the court is plaintiffs' motion for stage-one conditional certification of a putative opt-in class under FLSA and authorization to give notice to putative class members (dkt. 41), defined as "all past and present bartender employees who, since January 2018, worked for the defendants and were paid on a tip-credit basis." (Dkt. 42 at 2). Defendants oppose the motion, asserting that the complaint obviously fails on the merits; the claims are inappropriate for collective action because the

---

[1] The court has federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

named plaintiffs are not similarly situated; and there are insurmountable difficulties of proof for a collective action. Partners also has objections to plaintiffs' proposed notice. For the following reasons, plaintiffs' motion is granted.

## BACKGROUND

The allegations are summarized as follows: Partners compensates its tipped employees according to the tipped-employee[2] minimum wage of approximately $5.00 per hour, and customers' tips make up the difference between the $5.00 rate and the current minimum hourly wage. Partners, however, requires each bartender to provide regular customers approximately $50 worth of free drinks during each shift for purposes of building good will and encouraging repeat business. Each bartender keeps an open tab on Morrison's point-of-sale (POS) system to track complimentary drinks, known as the House Tab. Partners gives the bartender a credit representing 50 percent of the value of the complimentary drinks up to $25 (reflected on the House Tab as an "On Us" discount) and expects the bartender to pay the remaining balance using their cash tips. At the end of a shift, due to the free drinks, or at times for other reasons, if total sales recorded on a cash register do not match the amount of cash in the register drawer ("drawer shortage"), Partners requires bartenders to make up the drawer shortage from their cash tips.[3] Plaintiffs allege this practice was and is a policy of Partners applied to all hourly, tipped

---

[2] A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

[3] The allegations are supported by sworn declarations of the named plaintiffs, which are included as exhibits to the pending motion. (*See* dkt. 42-3.) Other documents that appear to be payroll records and point-of-sale tickets are also included (*see* dkts. 42-2, 42-4), although they are not authenticated or explained and are of limited use here, even though both parties rely on the POS tickets.

employees. They claim that this practice violates the tip-credit and tip-pool provisions of the FLSA.[4]

Partners denies that it requires bartenders to give complimentary drinks in any amount. Rather, they are permitted to do so. Essentially, the bartender buys the drinks she gives away, but Partners subsidizes her by crediting half of the price up to $50 worth of free drinks. Above $50, there is no subsidy. (Dkt. 50 at 1.) So if a bartender gave $40 worth of free drinks to patrons (such as friends or romantic partners), Partners would credit her $20. If she gave away $80 in free drinks, she would owe the house $55 at the end of the shift. As Partners sees it, this is a win-win for bartenders because it gives them $25 they would not otherwise earn, and it encourages the patrons to tip more generously.

## **ANALYSIS**

The FLSA provides that an action may be maintained against an employer by any one or more employees individually and on behalf of other employees similarly situated who have given written consent to be part of the action. 29 U.S.C. § 216(b). *See Woods* v. *New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982). The standards for conditional certification are straightforward. As summarized in *Bergman* v. *Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill., 2013) (citations omitted):

> The certification of an FLSA collective action typically proceeds in two stages. The first stage, which is now before the court, involves conditionally certifying a class for notice purposes. There is a low standard of proof. The court does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant.

---

[4] Briefly stated, 29 U.S.C. § 203(m)(2)(A) requires that the cash wage of a tipped employee must be at least the minimum wage as it existed on August 20, 1996 (presumably $5.00 an hour), plus whatever amount is needed to meet the current minimum wage. (The "tip credit" for the employer is conditioned on proper disclosure to the employee and a requirement that all tips received be retained by the employee.) Subsection (m)(2)(B) provides, "An employer may not keep tips received by its employees for any purposes … regardless of whether or not the employer takes a tip credit."

3

Instead, the conditional certification stage requires plaintiffs to make only a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Creal* v. *Group O, Inc.,* 155 F. Supp. 3d 831, 837 (N.D. Ill. 2016) (citation omitted).

Plaintiffs here rely on the following common characteristics to seek conditional certification: They all worked as bartenders for Partners; they were paid a tipped-employee hourly wage; a substantial portion of their wages came from tips; and they were required to use their own cash tips to cover drawer shortages due to discounted drinks or other causes. Partners argues that the motion should be denied because plaintiffs cannot meet even the modest modicum of proof required for conditional certification, and the "vast amount" of documents already produced (dkt. 50 at 2) demonstrates that the bartenders were in no way "*victims* of a common policy or plan that *violated the law*" (*id.*, quoting *Creal*, 155 F. Supp. at 837 (emphasis added by Partners)).

As Partners acknowledges, the court does not conduct a merits inquiry at this stage, so whether the policy or practice violates the law is mostly a question for another day. That said, in *Whitehead* v. *Hidden Tavern, Inc.*, 765 F. Supp. 2d 878, 883 (W.D. Tex. 2011), the court granted summary judgment in favor of plaintiffs who challenged a similar practice. *See also Hunter* v. *WirelessPCS Chicago LLC*, No. 18 C 980, 2022 WL 864533, at *1 n.2, 4–8 (N.D. Ill. Mar. 23, 2022) (conditionally certifying opt-in class where plaintiffs were required to make up drawer shortages); *Knox* v. *Jones Grp.*, 201 F. Supp. 3d 951, 962 (S.D. Ind. 2016) (denying motion to dismiss claim re drawer shortages). Partners' insistence that the "drink subsidy program" (as it characterizes the practice) is voluntary is obviously a disputed fact issue which the court may not resolve at this time.

4

As for commonality, each of the plaintiffs has attested that, in her experience, all bartenders were subject to a policy or plan requiring bartenders to forfeit part of their tips to Partners to make up for drawer shortages, which they allege violates the FLSA. The declarations are typically enough to meet the commonality requirement. *See*, *e.g.*, *Aon Corp. Wage & Hour Emp't Practices Litig.*, No. 08 CV 5802, 2010 WL 1433314, at *4 (N.D. Ill. April 8, 2010) ("At the first stage, the court leniently reviews pleadings and affidavits to determine whether there are allegations sufficient for the court to find that the representative plaintiff and putative class members are similarly situated."). Further, Partners agrees with plaintiffs that bartenders all have the same job responsibilities and they do return part of their tips to the house as described above. And Partners does not assert that some bartenders choose to participate and others do not, which implies that all bartenders participate and are similarly situated in that respect. Partners further contends that thousands of POS tickets already produced in discovery "establish[] the voluntariness of participation in the subsidy program." (Dkt. 50 at 2.) How this is so is neither explained nor obvious, and it is a merits issue not currently appropriate for resolution.[5]

Partners also believes the POS tickets demonstrate that plaintiffs are not similarly situated because each ticket represents a different transaction with different numbers and prices of complimentary drinks, if any, that each bartender gave to patrons. This argument misapplies the

---

[5] Partners cites several cases where the voluntariness of a practice was at issue. None helps Partners in the least. Only *Lockett* v. *Pinnacle Entm't, Inc.*, No. 19 C 358, 2021 WL 960424 (W.D. Mo. 2021), dealt with conditional certification under FLSA. There the court reviewed cases where "intermediate scrutiny" of the plaintiffs' claims was applied but, contrary to Partners' position here, the court chose the lower standard and conditionally certified the collective action. *Id.* at *4–5. The other cases were summary judgment denials and appellate review of trial evidence rulings, all favorable to the plaintiffs. *See Torres* v. *Cache Cache, Ltd.*, No. 12 C 150, 2013 WL 1685784, at *3–4 (D. Colo. Apr. 13, 2013) (summary judgment denied because parties disputed whether tip-sharing was voluntary); *Trahan* v. *Richard*, No. 19 C 942, 2020 WL 7391954, at *3–4 (W.D. La. Dec. 16, 2020) (same); *Roussell* v. *Brinker Intern., Inc.*, 441 Fed. Appx. 222, 229 (5th Cir. 2011) (affirming district court's evidentiary rulings *at trial* regarding coercion).

case Partners itself quotes in support, *Creal* v. *Group O, Inc.*, 155 F. Supp. 3d at 837. *Creal* states that the evidence must be "sufficient to demonstrate that [plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.* The POS tickets, which are barely explained, may reflect the difficulty of proof plaintiffs may face in the future, but they do not rebut plaintiffs' declarations that there was a common policy or plan that required them to forfeit part of their tips.

Partners also argues that the case should not be tried as a collective action because the POS tickets demonstrate that each plaintiff would have to rely on them in order to establish her claim (or damages, perhaps) but the tickets do not even show the bartender that prepared the drinks, among other unknowns. Partners cites *Espenscheid* v. *DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013), but again it is ahead of itself. In *Espenscheid*, the Seventh Circuit affirmed the district court's decertification of a FLSA class of more than 2,300 members because the plaintiffs were unable to show the court a practicable plan for litigating the case. *Id.* at 775–77. Obviously, preceding the decertification there was certification and conditional certification of a class (and subclasses). This argument is premature.

For the reasons stated above, the court concludes that plaintiffs have proffered sufficient evidence to demonstrate that they and potential plaintiffs together were subject to a common policy or plan that violated FLSA.

### **CONCLUSION AND ORDER**

Accordingly, the court orders as follows:

1. Plaintiffs' motion for conditional certification of a collective action (dkt. 41) is granted for an opt-in class of all past and present bartender employees of Partners

6

who, since January 2018, worked at Morrison Roadhouse and were paid on a tip-credit basis.

2. Plaintiffs' motion for decision and to toll statute of limitations (dkt. 46) is granted, delay in ruling on the motion not having been the fault of plaintiffs or their counsel. The statute of limitations is hereby tolled for opt-ins beginning January 20, 2023 to the date the Notice is mailed or July 6, 2023, whichever is earlier.

3. The parties are to confer in a sincere effort to reach agreement on the Notice and by June 15, 2023 submit to the court a proposed Notice with any remaining disagreements indicated. This must be in Microsoft Word format with redlining that the court can easily review and finalize.

4. By June 22, 2023, Partners shall provide to plaintiffs a list of last known addresses and email addresses of all potential members of the collective action.

5. Notice to potential opt-ins is to be mailed by July 6, 2023.

6. Consents to join this lawsuit are to be filed by no later than July 31, 2023.

7. A status hearing is set for June 28, 2023 at 9:30 a.m.

Date: June 1, 2023

_____
U.S. District Judge Joan H. Lefkow